Our second case this morning is Mamalakis v. Anesthetix Management LLC. Mr. Rosen. Thank you. Your Honor, may it please the Court, I'm Daniel Rosen and I represent Dr. John Mamalakis v. Anesthetix Management LLC. I'm here today to talk to you about a number of allegations in our complaint that, standing alone, all by themselves, even without all of the support of the 100-plus other allegations of the complaint, caused the District Court's logic to fail and our complaint to be found to be a good complaint under Rule 9b. First, at paragraph 56 of the complaint, we allege that the defendant's anesthesiologists, and having in mind that these anesthesiologists are among the defendants, they are employed by the defendants, the defendant's anesthesiologists understood that they were expected by the defendant's medical director to sign anesthesia records as if they were present in the operating room at 15-minute intervals, even when they were not. We allege at paragraph 38 that a true anesthesia record is a requirement for billing the government for anesthesia under 42 CFR 415.110. We allege at paragraph 93 we make the general allegation that, in fact, the practice of the defendant's anesthesiologists was to falsely sign the anesthesia record indicating their presence in the operating room when they weren't there. We then go and get more specific in response to when the District Court asked us to get more specific. We allege that Dr. Wittels, one of the anesthesiologists of the defendant, Dr. Wittels himself told the relator that he never goes into the operating rooms and that his practice was to always sign the anesthesia records beforehand as if he were present in the operating room at 15-minute intervals even when he was not. And also in that paragraph 107, we have the relator himself seeing with his own eyes an anesthesia record that confirms what the defendant's anesthesiologist, Dr. Wittels, told him. Those allegations all by themselves are enough to plead that all of the defendant's bills for Dr. Wittels' services were false claims submitted to the United States government. Now, we think all by itself that is enough to cause this complaint to live under Rule 9b. But the complaint, of course, is far more detailed and makes far greater allegations. We are assailed by both the appellee and by the District Court. It seems in both of their writings, we're accused of pleading on information and belief. But, in fact, we don't. Our complaint throughout is based on the relator's personal knowledge in depth at every element of this fraud with regard to every particular practice that was required of the anesthesiologist in order to bill for medical direction with regard to every one of those items. The relator pleads based on his own personal knowledge of not only the broad failures of the defendant's anesthesiologist to comply with the rules for billing, but also, very specifically, laying out, again, when the District Court asks us for specific examples, laying out 10 examples of that happening. And, by the way, those 10 examples, including all of the defendant's various anesthesiologists, which were not a big group. This, we believe... I think you're subduing that the defendant here could have lawfully billed Medicare for these services under the Code for Medical Supervision, as opposed to medically directed. Is that correct? Well, that's not correct, but I don't think that that really ultimately is going to bear on the decision here. No. Your Honor, for example, in our various... You're not alleging in your complaint, at least I don't see anywhere, and if I'm wrong, please identify where, that these services could not have lawfully been billed under the Code for Medical Supervision. Your complaint seems to be focused on medically directed. Our complaint is focused on medically directed. We allege that these defendants made it their policy to bill for medical direction. They gave instructions for how it was going to be that they were going to bill for medical direction, and we believe we are entitled to the inference that at least in a lot of cases, and of course we believe it's all of the cases, but at least in a lot of the cases, they actually did bill in accordance with their policy and in accordance with the overall guidance that they were giving to their doctors. From your allegations here, why is the necessary inference that the defendants billed for the claims as medically directed versus medically supervised? Well, first, the answer is in two parts. The first part is that's the necessary inference because that's the inference that favors us, which at this stage is what we are entitled to. The other side is not entitled. I understand it favors you, but I'm looking for why, what it is about your allegations that requires that inference. Even taking everything in your statement, what is it in your allegations that requires a conclusion that the defendants here billed under medically directed as opposed to medically supervised? Well, we begin with at the very beginning, at the very inception of the defendants taking over the anesthesia services at this hospital, that they declared to the doctors, we are going to be a firm that bills for medical direction. They then gave instructions to their doctors, this is how we are going to do it. We plead what it is that the instructions were. And by the way, those doctors being the defendants themselves. I think you've said one doctor's understanding. Well, no, I don't think that that's accurate, Your Honor. I believe that a paragraph, I'm going to say I believe it's at paragraph 56, but I just reached for the wrong document. But in the same paragraph where we allege that Dr. Peace, the medical director, gave her instruction, we also allege that Dr. Mamoulakis learned from his colleagues that they also understood that this meant sign the anesthesia records at 15 minute intervals, whether you are there or you are not there. Now, Your Honor, there is Mr. Rosen in your 10 examples that you plead in the low 100s of your complaint. At least by my count, you allege in seven of those that they were billed for medical direction. Yes. Let me ask, what would you say to a remand that said do discovery on those 10 examples? Let's see how they were billed. Well, Your Honor, because we pled it, we have very high confidence that those 10 examples were all billed as medical direction. If that in fact were the instruction, that would be an instruction that we would take back to the district court with great confidence. We don't actually believe that that's the requirement, but assuming that were the instruction, and if in fact some number of those 10 were actually billed or of those seven that Your Honor raised were actually billed for medical direction, then we are free to go forward. Your Honor, we don't actually believe that that's a bad result, because if we have the courage of our convictions, and remember, Dr. Mamoulakis was part of the small team that really did understand what was going on here, then we'd be right, and those instances will in fact prove out to be medical direction billing and fraudulent medical direction billing. I'm answering it on one foot, so to speak, but I do believe I can say with confidence we'd be all right with that. I think it's also, you know, we get down into the specifics of all of these, but I do think that it's important for us to back up or for us to elevate ourselves and take the broader perspective on how this complaint fits within the case law of the Seventh Circuit. And if we take the Lusby case and we look and see how do the facts of our case, how do the allegations of our case compare with other cases that have come down in the Seventh Circuit, we believe that our case is very similar to the Lusby case. And Lusby lays out what the purpose of 9B is in the context of these very sorts of claims. And they say it's enough, and the Lusby court said it's enough to show. One minute of your time, Mr. Rosen. It's enough to show in detail the nature of the charge so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy. I think we have anything other than vague and unsubstantiated allegations. We have a firm that has said they intend to bill everything in medical direction, and we have them never complying with the rules of medical direction. Lusby goes through a probability analysis to say that the plaintiff is entitled to an inference based on this, that they did submit some false bills. We are entitled to that same inference, and by that same probability analysis, we come through with flying colors. Thank you, Your Honor. Thank you. Mr. Warlinger. Thank you, Your Honor, and may it please the court. After five years and three complaints, the district court below dismissed Relator's key TAM suit because he did not plead a single representative example that alleged with particularity all the critical aspects of its broad theory. His complaint suffers from two independent defects. First, Relator has not pled falsity. He has not pled with particularity that the defendant's falsely coded anesthesia care under Medicare's medical direction rubric instead of one of the lawful alternatives he concedes existed, such as that would necessarily lead to the conclusion that a false bill was presented to Medicare. Falsity under Relator's theory is a two-part equation consisting of care and coding, care to a Medicare patient that did not satisfy the requirements of medical direction, but coding – excuse me, but the procedure was coded under the medical direction model anyway. The key problem with Relator's complaint is that none of his examples establish both sides of that equation. He never – Counsel, would you go to paragraph 111 of the second amended complaint? Yes, Your Honor. This is probably Relator's – probably the closest he gets to particularity. He offers the hearsay statement of a CRNA who purportedly told him that the case at issue was coded under the medical direction model. The problem with that allegation, Your Honor, is that he doesn't plead a basis for the CRNA knowing the coding information. Why didn't you plead that? You argued in your brief that it's hearsay, but this is pleading. So what? So, Your Honor, there's nothing categorically wrong with the hearsay allegation. But as this court pointed out in Pirelli, if you're going to rely upon somebody else's knowledge, you need to lay a foundation for that knowledge. In fact, the plaintiff in Pirelli tried – How about an agent speaking about a matter within the scope of her agency? Your Honor, I think that raises another critical failing of his complaint, which is that he has not laid any kind of basis for a care provider to know anything about the coding process. That's not an intuitive conclusion, Your Honor. We have allegations of false recording of the inputs for the billing. Are we supposed to assume that the defendants had systems in place to double-check all that and to question the anesthesiologist as to whether they were really there for every 15 minutes or there at all? Well, Your Honor, I don't think there's really anything to infer from this complaint because the relator hasn't told us anything about that process. What would you say to a limited remand for discovery on those 10 examples? Your Honor, I would disagree with that because I don't think the 10 examples themselves are properly pled as to coding. Again, the linchpin of his entire case is that these examples were, in fact, coded under the medical direction model instead of one of the other rubrics. And on that key allegation, all he offers is a bare conclusion that it was, in fact, so. That sounds to me like a factual allegation to me. These were billed in the medical direction. He may be wrong, but it sounds to me like a fact rather than a conclusion. It's an allegation, Your Honor, but it's not an allegation that is made with particularity. What else do you think was required? For those – under those specific 10, there were a handful that, as you noted, generally said that a doctor billed from medical direction rather than medical supervision. What else do you think is required to meet 9b for those particular allegations? So, Your Honor, if he's going to point to himself as the basis of that for that particular fact, he needs to plead particularized facts showing that he is actually in possession of knowledge related to that key element. He needs to tell us what he reviewed, who he talked to, and what he saw as it relates. That doesn't sound like deposition questions. No, Your Honor. I don't think so. I think this is the basic who, what, when, where standard that this court applies to Rule 9b. He's required, as this court said in Pirelli, and as it is repeated several times after that, a relator is required to plead – is required to plead facts around his allegations that inject precision and substantiation into his claims. The key paragraph he relies upon for his own personal knowledge is paragraph 102 of his complaint. This is a paragraph that he cites throughout, and he asserts it's the main paragraph that the district court missed. All that paragraph says is that each of the patients in his examples – each of his examples involved patients who were insured by government payers and whose procedures were known to be billed to the government. This paragraph doesn't say anything about coding, and it offers no real substantiation for what's even there. The rest of the specific examples – well, not all of them, but some of them – do say billed for medical direction. They do, Your Honor, but that – I'm sorry. I didn't mean to cut you off. What am I missing? You are correct, Your Honor, that the bare allegation is there, but what's missing, Your Honor, is anything to back that bare allegation up. He cannot satisfy his burden under Rule 9b merely by boldly claiming to know or boldly claiming to be an insider. He needs to give us some information to back that up. It sounds like you're trying to apply the pleading standard of the PSLRA under 9b, and the PSLRA – you might have an argument to that effect. I really don't see it under just 9b. We've got the specifics. You can do the investigation, and either the evidence supports it or it doesn't. Well, Your Honor, no, I'm not advocating for the PSLRA standard. And specifically, I think the key difference between those two standards is that under the PSLRA you have to plead the scienter of the defendant with particularity, whereas under Rule 9b it can be more general. I'm not saying that, Your Honor. But I am saying that insofar as he's trying to lay out the key elements of falsity by pointing to his personal knowledge, by claiming to be an insider, he needs to put some meat on that bone, and he has not done that. What can we make of the allegation that the relator complained to management about fraudulent billing practices, and they ignored his complaints? Well, Your Honor, I think – I beg your – I'm sorry. What can we make of that allegation, and would that add to viewing things in the light most favorable to the relator through his basis for knowledge? No, Your Honor. I don't think it does. That's for two reasons. Number one, those allegations are pretty high-level. He doesn't – I'm struggling to think of a paragraph where he says specifics of a conversation that he had with management and how that would inform his purported knowledge when it comes to the coding issue. And second, I think it's also – Paragraph 72. So paragraph 72, this is the paragraph where he says that he was informed by the medical director that he needed to avoid micromanaging CRNAs. That's put together in the anesthesia plan, which, as I understand it, the MDs are required to do for the medical direction coding, right? So, Your Honor, my understanding of the regulation is that they are required to prescribe the anesthesia plan. They're not – there's nothing per se wrong with a CRNA assisting in that process. And again, the words avoid micromanaging CRNAs, this is an allegation that he offers to back his claim of a system-wide fraud. And he just does not put any additional allegations around that to where we could draw an inference that this was a command for doctors to go out and commit fraud in every single case. Do you think it needs to be that explicit? I think there needs to be – Or does it have to be every case? Well, Your Honor, I point that out because he cites paragraph 72 as it relates to this specific allegation. Again, if we're using this for his personal knowledge, I don't see anything here related to the coding requirement. And therefore, I don't think it's a helpful allegation for him on that front. Let me just push back against that a little bit because on the specific examples, for example, the anesthesiologist alleged to have been tending to her horses instead of the patients. We don't necessarily have specific allegations about – it's possible that something was caught internally and it wasn't billed as medical direction. But here we have the medical director from the relator's perspective saying, as a matter of broad policy, don't micromanage the CRNAs. Let them put together the anesthesia plan when that seems to be one of the key elements required for billing for medical direction, which at least seems to have been the broad aim of the company. There seems to be at least some potential contradiction there. I beg your pardon, Your Honor. I'm not sure I fully understand the question. Okay. Let me be very explicit. If the company's policy is to bill as many procedures as possible as medical direction, and that seems to be alleged, you insist – and I understand your point of view – well, that may have been our goal, but that doesn't mean we've actually billed falsely in particular instances where we didn't comply with the requirements for medical direction. But here we have a fairly broad instruction coming from the medical director that seems to follow a practice that seems inconsistent with medical direction coding. Right. And my response to that, Your Honor, is that, number one, I'm not – based upon the facts that are pled here, set aside the color that he's adding to this through conclusions. I don't necessarily view this as an instruction to violate the regulations. But on top of that, I think this comes back to the broader – this comes back to the broader distinction between care and coding. If anything, this relates to the care aspect of the equation, not the coding aspect of the equation. And that's where his case is deficient. That's why he fails on falsity. Now, Your Honors, with my remaining time, if there are no further questions on falsity, I'd like to turn quickly to the issue of presentment because this is a separate basis upon which his complaint fails. He's got two big problems here, and I'd really like to focus on the second. First, he claims he's entitled to relax Rule 9b, but for the reasons stated in our red brief, he has not satisfied the preconditions for triggering that limited doctrine. But second, even if you want to give him the benefit of the relaxed standard, that does not mean that he can just boldly allege presentment. He still has to satisfy the Rule 9b standard, and in order to do that, he needs to plead facts that necessarily lead one to the conclusion that false claims were presented to the government. On this front, the main allegation he highlights from his complaint is this high-level statistic that 50% of teen health patients were insured by government payers. There's two problems with this. First, it's a largely unhelpful statistic. It's not specific to All Saints Hospital. It's not specific to Medicare, and it's not specific to anesthesia. Second, he doesn't do anything to take this statistic and plug it back into his transactional-level allegations in order to create that necessary inference that an actual false claim was presented to the government. What he's given you instead is a nonrandom sampling of 10 cases out of what he purports are potentially hundreds of thousands. And he tacks onto that a conclusory statement that these cases were Medicare cases and that they resulted in a bill presented to the government. Thank you, Your Honor. As this court and its sister circuits have said, we don't credit high-level mathematical guesswork when it comes to pleading presentment. That's what the court said in Cruz. That's what the court said in Fowler. The Sixth Circuit said it in Chesbrough, and the Eleventh Circuit said it in Carroll. To wrap it up, Your Honors… How about paragraphs 107, 112, and let's see, 111, all alleged to be Medicare patients? Right. In those instances – so there's two problems there. In those instances, Your Honor, he simply says that they're Medicare patients. But even if you want to credit that, he doesn't actually – he pleads nothing that would lead to a necessary conclusion that a bill was actually tendered to Medicare following these cases, let alone… Has there been a reasonable inference though that a for-profit company treating Medicare patients will bill Medicare for them? Well, Your Honor, not – so I think there's two things there, Your Honor. It's not necessarily the case. These big companies will write off – if a case is not properly documented, they'll write off cases all the time. And number two, this dovetails back into his failures when it comes to pleading the falsity element in that he has not given us any indication as to how the bill was actually – was it a bill for medical direction? We don't know. All he does is give us the broad allegation. Your time has expired. If you want to wrap up. If there's no further questions, I ask the court to affirm the judgment below. Thank you. Thank you, Your Honor. So I thought that the key thing to pick up on in the appellee's argument was that they essentially assail us for not coming up with specifics on every single element. But the case law is, and especially the case law in this particular circuit, is that when you have relators, you are always going to have relators that are missing direct knowledge of one of those particular necessary areas, which is why we say – and it says it in Lusby, and it says it in Acacia, and it even says it in the Pirelli case that they cite too, which is much different than ours – why it says that the relator is entitled to these inferences. And look, if you have a policy of billing for medical direction, if you have – and I think I'd like to focus for one moment here on paragraph 103. In paragraph 103, we have one doctor calling the relator saying, hey, we've got a problem here because Dr. Lee is not in the hospital. And if I take his cases and I start signing for him, that's five concurrent cases for me. I can't do that. Members of the court, there is only one reason why they wouldn't be able to do that, and that's because it exceeds the four concurrent case limit of medical direction. So when they say that – and under those circumstances, where we have doctors conferring with one another saying, we have a problem here because we can't do that, which is necessary to bill for medical direction, I think we – and then we have the direct allegation that Dr. Lee came back, signed him anyway. So despite not being there, I think we are certainly entitled to the inference that they billed for medical direction in that case because there's no other reason why they would do anything else. Members of the court, this is a case that stands apart from the cases. If you just kind of look and see how we fit into the cases where the complaints were allowed to go forward and the cases where the complaints weren't allowed to go forward, you really kind of need to shoehorn us in. The cases where they weren't allowed to go forward, and we fit really quite smoothly in with, for example, Acacia and Lusby, where they were allowed to go forward. You have – they cited the Pirelli case I noted. Pirelli was a case where the relator was actually – or where the plaintiff was actually relying on allegations that he read in another case, in a complaint in another case. We have an insider, part of the small group of people whose behaviors and actions were the absolute essential to this company making money in accordance with what its policy and practice was supposed to be. We think that – we were told that we had a good complaint provided we pled representative examples. We came back. We gave 10 good representative examples. Members of this court, this claim ought to be allowed to go forward. Thank you so much. Thank you. Thanks to both counsels. The case is taken on five.